UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re: } | | |
| **Philip B. Bishop,** } | CASE NO. | 03-80636-JJR |
| } | | |
| Debtor. } | CHAPTER: | 11 |

___

| | | |
|---|---|---|
| **Philip B. Bishop,** } | | |
| } | | |
| Plaintiff, } | | |
| v. } | AP No. 08-40078-JJR | |
| } | | |
| **Thomas Gamble; Thomas Gamble, Inc.,** } | | |
| **a corporation, d/b/a Gamble Construction;** } | | |
| **Marshall C&D, LLC; and Kelly Zeigler,** } | | |
| } | | |
| Defendants. } | | |

## MEMORANDUM OPINION ON MOTION TO REOPEN DISMISSED CASE AND REMAND OF REMOVED STATE COURT LAWSUIT

This adversary proceeding was initiated when the Defendants removed to this Court a lawsuit originally commenced by the Debtor in the Circuit Court of Marshall County, Alabama (AP Doc. #1 and herein, the "State Action").[1] The Defendants also filed a Motion to Reopen (Doc. #106)[2] the previously dismissed chapter 11 case of the Debtor. The Debtor and the Bankruptcy Administrator oppose reopening the bankruptcy case and also seek a remand of the State Action (Doc. #'s 122, 123, 124, and AP Doc. # 8). This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§

---

[1] In the Court's CM/ECF file for the adversary proceeding, the Defendants are incorrectly shown as the plaintiffs and the Debtor is incorrectly shown as the defendant. This error was caused by the same reversal of the parties' positions on the Adversary Proceeding Cover Sheet filed by the Defendants when they removed the State Action to this Court.

[2] Documents filed in the Debtor's bankruptcy case are referred to as "Doc.#__" and documents filed in the adversary proceeding are referred to as "AP Doc.#__."

157 and 1334, and the General Order of Reference dated July 16, 1984, as amended July 17, 1994, entered by the United States District Court for the Northern District of Alabama. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter final orders. In compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure,[3] the following shall constitute the Court's findings of fact and conclusions of law.

## Procedural Background and Findings of Fact

The Debtor filed a chapter 11 bankruptcy petition on February 13, 2003, and fifteen days later filed his schedules and statement of financial affairs (Doc. # 10). On Schedule B - Personal Property, he listed a checking account, household goods, antiques, clothing, jewelry, guns, mutual funds, four vehicles, two boats, an airplane, and stock in three corporations, including Philip Bishop Equipment Co., Inc. ("PBE, Inc."). The Debtor valued his stock in each of the three corporations at "$0.00" and valued the remainder of his personal property at $199,516.57. In the Declaration Concerning Debtor's Schedules (Form B6) signed by the Debtor and filed with his schedules, he "declared under penalty of perjury that I have read the foregoing summary and schedules . . . and that they are true and correct to the best of my knowledge, information and belief."[4]

Although the Debtor proposed a plan of reorganization (Doc. #91), it was not confirmed. The Bankruptcy Administrator filed a Motion to Dismiss the case (Doc. #82), which was granted on March 19, 2004 (Doc. # 104).

---

[3] Unless the context otherwise provides, all references to a "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure.

[4] A similar declaration was filed with the Debtor's Statement of Financial Affairs.

2

The State Action was commenced in Marshall County Circuit Court on April 23, 2006. According to the allegations made by the Debtor in his Amended Complaint (AP Doc. #1) filed in the State Action, he was the sole or principal shareholder of PBE, Inc., and the Debtor and/or PBE, Inc.[5] owned several pieces of heavy equipment having a value of approximately $1 million.[6] The Debtor claimed this equipment was used in a joint venture created in 2001 with the Defendants, and he alleged the Defendants converted the equipment and breached the joint venture agreement. The Amended Complaint demanded a turnover of the equipment, damages for its conversion, and an accounting for profits from the joint venture. Accordingly, based on the averments in the Amended Complaint, at the time the Debtor filed bankruptcy he owned several pieces of valuable equipment (or held all the stock in a corporation owning such equipment) and was a partner in a profitable joint venture.[7] Nonetheless, the equipment (or its value reflected in PBE, Inc. stock), the joint venture, and the claims against the Defendants were not disclosed in the Debtor's schedules.[8]

The Defendants filed a counterclaim in the State Action against the Debtor, asserting various

---

[5] The Debtor and PBE, Inc. are co-plaintiffs in the State Action, and it is difficult to determine from the averments in the Amended Complaint who owns the equipment at issue. Based on the averments, it appears they made no significant effort to maintain any distinction between their business operations and assets.

[6] In Count Four of the Amended Complaint, the Debtor valued the equipment at $1 million.

[7] Even if the equipment was owned by PBE, Inc. and not the Debtor, the Debtor valued his interest in the corporation at "0.00."

[8] Counsel for the Debtor admitted the Debtor failed to properly schedule his assets, and attributed the omissions to the Debtor's advanced age. Counsel argued the equipment was encumbered by a substantial judgment which would have left no equity for unsecured creditors. However, like the missing assets, no judgment creditor was disclosed on the Debtor's schedules. Counsel who now represents the Debtor in these matters did not represent the Debtor during the bankruptcy proceedings in 2003-2004 and cannot be held accountable for the omissions.

claims. The State Action was tried before a jury during the week of March 18, 2008. On March 24, 2008, the jury returned a verdict in favor of the Debtor on the Defendants' counterclaim but failed to reach a verdict on the Debtor's claims asserted against the Defendants in the Amended Complaint. The Debtor's claims were reset for trial on September 2, 2008; however, on August 29, 2008, the State Action was removed and became an adversary proceeding in this Court.

**Positions of the Parties and Conclusions of Law**

*Reopening the Case*:

The Defendants asserted the Debtor committed fraud on this Court by filing bankruptcy schedules with material omissions, and they proposed the Debtor's case should be reopened pursuant to Section 350(b) of the Bankruptcy Code[9] for the purpose of administering the omitted assets. Section 350 reads as follows:

> (a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.
> (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

The Debtor and Bankruptcy Administrator argue Section 350(b) is applicable only to a case closed after its estate was administered, and the Section does not authorize the reopening of a case like the Debtor's which was dismissed and not administered. They also argue the Defendants lack standing to pursue reopening because the Defendants were not creditors or other parties in interest in the bankruptcy case. Based on the parties' pleadings in the State Action, it is apparent the

---

[9] 11 U.S.C. § 101 et seq., and herein referred to as the "Bankruptcy Code" or the "Code." Unless the context otherwise provides, as used herein the term "Section" refers to a section, subsection or other division of the Code.

4

Defendants had extensive business dealings with the Debtor both before the bankruptcy and after its dismissal; however counsel for the Defendants concedes his clients were not creditors of the Debtor at the time the bankruptcy case was filed, and the Defendants have not demonstrated how they might otherwise qualify as parties in interest.

The majority of courts, which have addressed the issue of whether Section 350(b) authorizes the reopening of a dismissed case, have agreed with the Debtor and Bankruptcy Administrator; those courts have held a dismissed case may not be reopened under Section 350(b). According to the majority, only cases whose estates have been administered and closed may be reopened pursuant to that Section. *In re Hackney*, 2007 WL 128739, *3 (Bankr. N.D. Ala. 2007); *In re Woodhaven*, Ltd., 139 B.R. 745, 747-48 (Bankr. N.D. Ala. 1992); see also, *Cole v. Household Fin. (In re Cole)*, 382 B.R. 20 (Bankr. E.D.N.Y. 2008); *Singleton v. Countrywide Home Loans, Inc. (In re Singleton)*, 358 B.R. 253, 257-58 (D.S.C. 2006); *Critical Care support Serv., Inc. v. U.S.* (*In re Critical Care Support Serv.)*, 236 B.R. 137, 140-41 (E.D.N.Y. 1999); *In re King*, 214 B.R. 334 (Bankr. W.D. Tenn. 1997). The Defendants are not without authority to support their argument; they rely on the minority position stated in *In re Ross* where the bankruptcy court held a dismissed case could be reopened pursuant to Section 350(b). 278 B.R. 269 (Bankr. M.D. Ga. 2001). The *Ross* Court concluded:

> The Court can reopen this case without any effect on the Order of Dismissal. Therefore neither the language of the Section 350 nor the effect of dismissal support the exclusion of a case that has been dismissed and subsequently closed from the operation of Section 350(b).

*Id.* at 272-73.

Regardless of whether this Court follows the majority or minority interpretation of Section

5

350(b), the Defendants must, in either event, satisfy Rule 5010 which implements Section 350(b). Rule 5010 provides, "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." None of the Defendants is a creditor of the Debtor and none otherwise qualifies as a party in interest. More specifically, the Defendants are unable to show they had a pecuniary interest directly affected by the Debtor's bankruptcy case. Thus, they are not parties in interest with standing under Rule 5010. *Nintendo Co., LTD v. Patten* (*In re Alpex Computer Corp.*), 71 F.3d 353, 356 (10th Cir. 1995).

Although the Defendants lack standing to pursue reopening the bankruptcy case, they have uncovered what appears to be an egregious fraud perpetrated on actual parties in interest and this Court. Honesty and full disclosure are absolutely required for bankruptcy jurisprudence to function and have credibility among its participants and the public. Full disclosure in any bankruptcy case begins with accurate schedules, including a description of all the debtor's assets. Schedules are signed by debtors under penalty of perjury, and counsel signs bankruptcy petitions under the implicit representations of Rule 9011(b). The gauge for measuring the accuracy of bankruptcy schedules is not calibrated with the same tepid standard applicable to averments in a civil action complaint. Rather, bankruptcy schedules are representations of hard facts about which there should be little or no equivocation, and to the extent there is uncertainty, it should be explained. While the value assigned to an asset may be subject to a more forgiving standard because value is often based on opinion, the disclosure and identification of an asset are absolute, with no room for unexplained ambivalence. The Code and Rules mandate a debtor schedule *all* property, *wherever* located and by *whomever* held, in which he has a legal or equitable interest. Section 541(a); Rule 1007. The disclosure of assets is subject to a simple binary formula: the debtor either (1) owns an interest in

6

an asset or (2) he does not; and the former requires disclosure. "[T]here is no 'Oops' defense to the concealment of assets and . . .[such] facts establish a 'bad faith' case." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 370 (2007) (confirming bankruptcy court's refusal to allow chapter 7 debtor to convert to chapter 13 because of debtor's misleading schedule of assets).

In this case, it appears the Debtor failed to disclose his interest in several pieces of heavy equipment he owned at the time he filed bankruptcy in 2003, though he now values them in the State Action at $1 million. It appears he also failed to disclose his interest in a joint venture with the Defendants for which he now claims undistributed profits.[10]

Even though the majority of reported cases hold a dismissed case may not be reopened under Section 350(b) and Rule 5010, the same result may be achieved if an order of dismissal is set aside pursuant to Rule 9024. The Eight Circuit Bankruptcy Appellate Panel held, "a dismissed case cannot be reopened under § 350(b); rather a dismissal can be undone only through an appeal or a motion under Federal Rule of Bankruptcy Procedure 9023 or 9024." *Finch v. Coop* (*In re Finch*), 378 B.R. 241, 246 (8th Cir. B.A.P. 2007). Rule 9024 states that Federal Rule of Civil Procedure 60[11] applies in cases under the Bankruptcy Code. Fed.R.Civ.P. 60(b) provides, "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for" various stated reasons. Those reasons include, among others, "fraud, misrepresentation, or other misconduct of an adverse party." However, a motion based on fraud,

---

[10] The joint venture should have been disclosed in part 18 of the Statement of Financial Affairs, and part 13 of Schedule B. The Debtor's claim for undistributed profits should have been disclosed in part 20 of Schedule B.

[11] Unless the context otherwise provides, all references to "Fed.R.Civ.P." are to the Federal Rules of Civil Procedure.

7

misrepresentation or misconduct must be made not more than one year after entry of the judgment or order; the dismissal of the Debtor's case occurred over one year ago. Nonetheless, Fed.R.Civ.P. 60(b) emphasizes it "does not limit the power of the court . . . to set aside a judgment for fraud upon the court."

> According to the Second Circuit Court of Appeals, fraud upon the court –
>
> cannot be read to embrace any conduct of an adverse party of which the court disapproves; to do so would render meaningless the one-year limitation on motions under F.R.Civ.P. 60(b)(3). See 7 Moore, Federal Practice ¶ 60.33 at 511 (1971 ed.). Professor Moore submits that the concept should "embrace only that species of fraud which does or attempts to, defile the court itself, or is *a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.*" (citation omitted) . . . . While an attorney "should represent his client with singular loyalty that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court." 7 Moore, *supra*, at 513.

*Kupferman v. Consolidated Research & Mfg. Corp.,* 459 F.2d 1072, 1078 (2nd Cir. 1972) (emphasis added).

In *Gumport v. China Int'l Trust & Inv. Corp.* (*In re Intermagnetics America, Inc.*), 926 F.2d 912 (9th Cir. 1991), a bankruptcy court's order approving a sale stated it was based on the representations and warranties of the debtor's CEO. A side deal in which the CEO stood to received a substantial profit was concealed from creditors and the court. After the sale closed, the fraud was discovered, and the court appointed a trustee and terminated the CEO's control of the debtor and its status as debtor-in-possession. The trustee filed a complaint against China International when he discovered it was implicated in the fraudulent sale. The trustee asserted various claims against China International, including avoidance of the sale and return of the assets or their value. The complaint was transferred to district court where China International filed a motion to dismiss, raising as a

8

defense the *res judicata* effect of the bankruptcy court's order approving the sale. The district court granted the motion and rejected the trustee's argument that the sale order should be set aside pursuant to Fed.R.Civ.P. 60(b) because of the CEO's admittedly fraudulent declaration.

On appeal, the Ninth Circuit reversed the district court and, like the Second Circuit in *Kupferman*, *supra*, expressed its approval of Professor Moore's definition of "fraud upon the court." 926 F.2d at 916. Citing two bankruptcy courts' opinions as authority,[12] the Circuit Court ruled, "[o]fficers of a debtor-in-possession are officers of the court because of their responsibility to act in the best interests of the estate as a whole and the accompanying fiduciary duties." *Id.* at 917.

If the CEO of a corporate debtor-in-possession was considered an officer of the court when he made representations concerning the debtor's sale of assets, then the Debtor in this case, an individual debtor-in-possession, was likewise an officer of the court when he made representations that his schedules were true and correct.

A motion to dismiss or convert a case to another chapter is a contested matter requiring at least 20 days notice to all creditors before a hearing is held on the motion.[13] At the time the Debtor's case was dismissed, Section 1112(b) provided, "on request of a party in interest . . . or the bankruptcy administrator, and after notice and a hearing the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest

---

[12] *In re TriCran, Inc.*, 98 B.R. 609, 617 (Bankr. D. Mass. 1989); *In re Tudor Assocs. Ltd., II,* 64 B.R. 656, 662 (E.D.N.C. 1986). *See also*, *In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 816-17 (Bankr. N.D.N.Y. 1989) (fiduciary duties of a debtor-in-possession are owed to the estate, the creditors, and the *court)*.

[13] Rules 1017(f), 2002(a)(4), 9014.

9

of creditors and the estate."[14] Notice and a hearing are necessary to allow creditors an opportunity to consider whether it is in their best interest for a case to be dismissed or converted. To make an informed decision, the creditors must have access to accurate information concerning the debtor's assets and liabilities. Creditors have the right to know if there are available assets that might be administered and liquidated in a chapter 7 case for their benefit or that might support a creditor-sponsored plan if the case remains in chapter 11. If assets are available, conversion to chapter 7 or a creditor-sponsored plan in chapter 11 might be in the best interest of creditors rather than a dismissal. Similarly, the court needs the same information to adjudicate the merits of a motion to convert or dismiss and a party's objection to such a motion. The maxim that the submission of substantially accurate schedules by a debtor is necessary for a bankruptcy court to "perform in the usual manner its impartial task of adjudging cases that are presented for adjudication" cannot be seriously debated.[15] In this case, it appears accurate information was not available to the creditors or the Court because of substantial omissions from the Debtor's schedules.

Accordingly, this Court finds the Debtor, as a debtor-in-possession, was an officer of the Court when he filed his schedules, and from all appearances, was guilty of committing fraud upon this Court when he declared they were true and correct. Whether omissions from schedules are

---

[14] Portions of Section 1112 were changed by the Bankruptcy Abuse Prevention & Consumer Protection Act of 2005. Those changes would not affect this opinion if they had been in effect when the Debtor's case was dismissed.

[15] *Kupferman, supra* at 1078.
As mentioned above, counsel currently representing the Debtor did not represent the Debtor in his bankruptcy case in 2003-2004. If Debtor's original counsel, who represented him when the schedules were filed, knew or should have known after reasonable inquiry that the schedules were false, then according to Professor Moore (quoted in *Kupferman*, *supra*), such counsel also would be guilty of perpetrating a fraud on the court. *See* Rule 9011(b).

10

Case 08-40078-JJR    Doc 11    Filed 02/06/09    Entered 02/06/09 16:34:58    Desc Main
Document      Page 10 of 16

intentional, an innocent oversight, or the result of negligence, erroneous advice of counsel, lapse of memory or mental handicap, the injury is the same: "the judicial machinery [of the bankruptcy court] cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kupferman*, *supra.*

The remedy for aggrieved creditors is for the Court to set aside the order dismissing the Debtor's case; however, in this instance, the Defendants are not aggrieved creditors, they are not otherwise parties in interest, and they have no standing to pursue such remedy. Nonetheless, at least one court has suggested that once fraud upon the court is discovered, the court may *sua sponte* set aside its orders:

> Both parties have at times characterized the settlement, of which the lease arrangement was a secret provision, as a "fraud on the court." Were the characterization accurate, the defrauded district court would have been empowered to take action sua sponte to expunge the judgment, and we would suppose that anyone, whether his hands were clean or dirty, could suggest that it do so. Indeed, as much is indicated by *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 1944, 322 U.S. 238 . . . .

*Martina Theatre Corp. v. Schine Chain Theatres, Inc.*, 278 F.2d 798, 801 (2nd Cir. 1960).

It is understandable why the Second Circuit interpreted the Supreme Court's opinion in *Hazel-Atlas Glass Co.*, *supra*, as authorizing a court to *sua sponte* set aside a previous order after discovering it was deceived:

> Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

322 U.S. at 246; overruled on other grounds, *Standard Oil of Cal. v. U.S.*, 429 U.S. 17 (1976).

11

It would be an extreme, if not unprecedented initiative for the Court to *sua sponte* set aside the dismissal of the Debtor's case. Yet, such action was seriously considered to preserve the integrity of the bankruptcy judicial process and to right a wrong apparently committed against the institution of the Court. After further consideration, and in light of the time lapsed since dismissal, a more practicable approach may be to inquire if there is a *bona fide* party in interest who will take up the vanguard to reopen the Debtor's case and pursue the administration of the estate, including the omitted assets, and likely seek the appointment of a trustee. Although there is no requirement to do so, the Court finds that in the interest of promoting a just result in this case, Defendants' counsel may serve copies of this opinion and the accompanying order on creditors and other parties in interest who shall be allowed 30 days to intervene under Rule 7024 and Fed.R.Civ.P. 24 or to file their own motion to set aside the dismissal. The foregoing procedure is not unlike a court allowing plaintiffs' counsel an opportunity to notify putative class members that their class representative was found unqualified and provide them with an opportunity to intervene and substitute a qualified representative. See *Birmingham Steel Corp. v. Tenn. Valley Authority*, 353 F.3d 1331 (11th Cir. 2003). If no creditor or other party in interest comes forward within the allotted time, the dismissal of the Debtor's case will not be disturbed.[16]

*Remand of State Action*:

---

[16] As mentioned in note 9, *supra*, no good reason was given by the Debtor for the omission of assets described in the State Action Amended Complaint from the bankruptcy schedules. When the Amended Complaint is compared with the schedules, a prima facie cases is made for the schedules being declared materially false. Yet, the Court has not closed the door to further explanation by the Debtor. If a party in interest comes forward and pursues reopening the Debtor's case, the Debtor will have an opportunity to further explain the discrepancies.

12

Section 1334(b) of title 28 of the U.S. Code provides, "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [i.e. the Bankruptcy Code], or arising in or related to cases under title 11." Section 1452(a) of title 28 provides that a party may remove a civil action to the district court if the district court has jurisdiction over such action under 28 U.S.C. § 1334. Bankruptcy courts are a unit of the district courts, and the district courts may refer to the bankruptcy courts all proceedings arising under the Bankruptcy Code or arising in or related to a bankruptcy case. 28 U.S.C. §§ 151,157(a). Such referrals are made by the District Court for the Northern District of Alabama pursuant its General Order of Reference, *supra*. Thus, when the State Action was removed, it came to this Bankruptcy Court because it purportedly was a civil proceeding which fell within federal court jurisdiction under § 1334(b), *supra*.

Removal jurisdiction based on § 1452(a) is not in all instances conditioned on the kindred bankruptcy case remaining open at the time of removal, or if previously closed being reopened. "Although a case has been closed the court may sometimes act without reopening the case." Advisory committee Note to Rule 5010. However, where "the determination of the . . . matter requires the bankruptcy court to revisit the substance of its prior decision . . . the bankruptcy case must be reopened." *Leach v. Buckingham* (*In re Leach*), 194 B.R. 812, 814 (E.D. Mich. 1996). In the instant case, the State Action will require, *inter alia*, an adjudication of whether the Debtor or Defendants are the rightful owners of the disputed assets identified in the Amended Complaint, whether the parties had formed a joint venture, and if so, who is entitled to the profits. An adjudication of what assets are property of the bankruptcy estate is a core proceeding under 28 U.S.C. § 157(b). If the Court ruled in favor of the Debtor, then the Court's order dismissing the bankruptcy case would have to be set aside, and the disputed assets deposited into the bankruptcy

13

estate for administration in accordance with the Bankruptcy Code. Indeed, if this Court were to exercise § 1452(a) jurisdiction over the State Action, its first ruling, before hearing the merits of the State Action, would be to reopen the Debtor's bankruptcy case. However, regardless of the merits of the State Action, because the Defendants lack standing they are not entitled to such a ruling.

Putting aside the issue of the Defendants' standing to pursue reopening the bankruptcy case, the Court finds the State Action should, in any event, be remanded to the Circuit Court of Marshall County pursuant to 28 U.S.C. § 1452(b), which provides that a federal court may remand a removed action on equitable grounds.[17] Similarly, 28 U.S.C. 1334(c)(1) provides, "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." The State Court has already held one trial of the State Action, which concluded in a jury verdict in the Debtor's favor on the Defendants' counterclaim, but the jury was unable to reach a verdict on the Debtor's Amended Complaint against the Defendants. The State Court is familiar with the issues and parties and should require very little preparation for another trial; thus, judicial economy will be served if the State Action remains with the State Court. In fact, the State Court quickly set another trial date, but before the second trial began the State Action was removed. There is no reason to believe the State Court will not promptly schedule yet a third trial date and timely adjudicate the Debtor's Amended Complaint. Additionally, the State Action is to be tried before a jury. While this Court is authorized by the District Court to hold jury

---

[17] Even if the Defendants were found to have standing and the Debtor's case was reopened, the Court's decision to remand the State Action would not be different.

trials with the consent of the parties, the State Court is better equipped to do so.[18] Accordingly, considering all of the circumstances, including the equitable considerations discussed above, and in the interest of justice and comity with the State Court, this Court concludes it should abstain from retaining the State Action even if the bankruptcy case were reopened pursuant to a motion filed by parties with standing. Thus, the State Action will be remanded to the State Court.

Notwithstanding the foregoing, if the Debtor's bankruptcy case is subsequently reopened by a qualified party in interest and the Debtor becomes entitled to a recovery via judgment, settlement or otherwise in the State Action, such recovery must be returned to this Court to be administered as an asset of the Debtor's bankruptcy estate. If the bankruptcy case is not reopened, any such recovery may be retained by the Debtor as his absolute property without further order from this Court.

*Judicial Estoppel*:

This Court cannot remand the State Action with strings attached or otherwise instruct the State Court on how to conduct its business. Nonetheless, before allowing the Debtor to further prosecute his claims against the Defendants, this Court would urge the State Court to carefully consider whether the Debtor's claims are barred by judicial estoppel. "'Judicial estoppel' is an equitable doctrine that protects the integrity of the judicial process 'by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d at 1341, n. 6 (11th Cir. 2003) (quoting *New Hampshire v.*

---

[18] "Bankruptcy Judges for this district are specially designated to conduct jury trials in accordance with 28 U.S.C. § 157(e)." Order *In re General Order of Reference Dated July 16, 1984, As Amended July 17, 1994*, dated January 12, 1995 by the U.S. District Court for the Northern District of Alabama.

*Maine*, 532 U.S. 742, 749-50 (2001)).[19]  A juxtaposition of the Debtor's bankruptcy case and the State Action appears to compose a classic example for application of the doctrine of judicial estoppel.  Although application of judicial estoppel may result in the Defendants escaping liability if they are in fact guilty of the misdeeds alleged in the State Action, a far greater iniquity will occur if the Debtor is permitted to benefit from gaming the judicial system.  While judicial estoppel may be raised by a party as a defense, its primary purpose is to protect the integrity of the courts.  All courts have a duty to protect their sister courts, whether state or federal, from being manipulated by a litigant who takes a position contrary to that taken in a previous legal proceeding; such conduct by a litigant may facilitate his interest, but it makes a mockery of the judicial system.  The facts in these proceedings merit further judicial scrutiny before the Debtor is allowed to resume his prosecution of the Amended Complaint in the State Action.

An order will be entered consistent with the findings and conclusions stated in this opinion.

Dated:  February 6, 2009

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

---

[19]  Based strictly on a comparison of the Amended Complaint with the bankruptcy schedules, the only conclusion that can be reached is the Debtor took a substantially different position in bankruptcy court from that he now takes in state court regarding ownership of valuable assets.  Disclosure of the equipment in the bankruptcy case may have led to its liquidation for the benefit of creditors, but in the State Action the Debtor's ownership of the equipment is needed to support his claims for its return and damages.  Likewise, disclosure of the joint venture in the bankruptcy case may have resulted in profits going to creditors, while the Debtor claims the profits for his own pocket in the State Action.  The claims asserted in the Amended Complaint also concern parcels of real estate, which may or may not have been disclosed in bankruptcy; the Court has not attempted to compare the real estate disclosed in the bankruptcy schedules with that described in the Amended Complaint.  In all such events, however, the Debtor should be estopped from pursuing claims asserted in his Amended Complaint that involve assets not disclosed in his bankruptcy case.